**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF ALABAMA**
**SOUTHERN DIVISION**

| | | |
|---|---|---|
| **REGINALD GERARD ENNIS,** | ) | |
| | ) | |
| **Petitioner,** | ) | |
| | ) | **CIVIL ACTION NO. 05-0668-WS** |
| **v.** | ) | |
| | ) | **CRIMINAL ACTION NO. 03-0078-WS** |
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | |
| **Respondent.** | ) | |

**ORDER**

This matter is before the Court on the petitioner's motion to vacate, filed pursuant to 28 U.S.C. § 2255. (Doc. 79). The parties have filed briefs in support of their respective positions, (Docs. 79, 86, 91), and the motion is ripe for resolution. After carefully considering the foregoing materials, as well as other relevant materials in the file, the Court concludes that the motion is due to be denied.

**BACKGROUND**

The petitioner was indicted in March 2003 on charges including conspiracy to possess with intent to distribute over 50 grams of crack cocaine. (Doc. 1). In April 2003, and pursuant to 21 U.S.C. § 851(a), the respondent filed an information to establish prior felony drug convictions, (Doc. 6), which the petitioner did not challenge. (Doc. 54). In June 2003, the defendant pleaded guilty to the conspiracy charge. (Doc. 30).

The statutory minimum when the conspiracy involves 50 grams or more of crack cocaine and the defendant has a prior felony drug conviction is 20 years. 21 U.S.C. § 841(b)(1)(A). Because the guideline sentencing range fell below this minimum, the Court sentenced the petitioner to a term of imprisonment of 20 years. (Doc. 57; Doc. 71 at 6-7).

The petitioner appealed on the grounds that his guilty plea was not knowingly and voluntarily made and that the Court abused its discretion in denying his attorney's motion to withdraw on the morning of trial. The Eleventh Circuit affirmed. (Doc. 78).

The plea agreement contained a "limited waiver of right to appeal sentence." (Doc. 29 at

8).  The petitioner thereby waived all right of appeal of his sentence, save for any punishment above the statutory maximum or based on an upward departure from the guideline range, as well as any claim of ineffective assistance of counsel.  (*Id*.).  The waiver applies to both direct appeal and collateral attack under Section 2255.  (*Id*.).

## CLAIMS PRESENTED

The petitioner presents the following issues:

- •   Whether his Sixth Amendment rights were violated because the amount of drugs attributable to him was not determined by a jury, under a reasonable doubt standard;

- •   Whether his Sixth Amendment rights were violated because his prior convictions for felony drug offenses were not determined by a jury, under a reasonable doubt standard;

- •   Whether his trial counsel rendered ineffective assistance by failing to argue that his Sixth Amendment rights were being violated;

- •   Whether his trial counsel rendered ineffective assistance by failing to properly investigate the quantity of drugs which could be attributed to him.

(Doc. 79 at 4-5).

## DISCUSSION

**I.  *Booker* Claims.**

The petitioner acknowledges that the success of his first two claims is dependent on the applicability of *United States v. Booker*, 543 U.S. 220 (2005), to his situation.  (Doc. 79 at 4-5).  He spends most of his excessively long 97-page opening brief arguing the supposed merits of his *Booker* claims and the retroactivity of *Booker* to his case.  (Doc. 80 at 3-66, 73-85, 87-92).[1]  The threshold issue, however, as the respondent points out, is whether the petitioner waived the right

_____

[1]The petitioner's brief skips pages 48 and 94, so that his pagination differs from that of CM/ECF.  The Court's references to the brief employ the latter numbering system.

to challenge his sentence based on *Booker*.

"[T]he right to appeal a sentence based on *Apprendi/Booker* grounds can be waived in a plea agreement," and "[b]road waiver language covers those grounds of appeal." *United States v. Rubbo*, 396 F.3d 1330, 1335 (11th Cir. 2005).  Language such as that contained in the petitioner's waiver "is broad enough to include an *Apprendi/Booker* claim." *United States v. Grinard-Henry*, 399 F.3d 1294, 1295-96 (11th Cir. 2005)(addressing a waiver substantively comparable to the instant waiver).[2]

As noted, the petitioner's waiver contains three exceptions.  The first, for claims of ineffective assistance of counsel, plainly does not apply to the petitioner's claims of *Booker* error.

Nor did the Court impose "[a]ny punishment ... in excess of the statutory maximum." (Doc. 29 at 8, ¶ 22.a).  "Ordinarily and naturally, 'statutory maximum' ... refer[s] to the longest sentence that the statute which punishes a crime permits a court to impose, regardless of whether the actual sentence must be shortened in a particular case because of the principles involved in the *Apprendi/Booker* line of decisions." *United States v. Rubbo*, 396 F.3d at 1335.  That is, the "statutory maximum" for purposes of the appeal waiver is the maximum term of incarceration the sentencing statute allows to be imposed for the crime of which the petitioner was convicted, not the maximum term that can be supported looking only to those facts established by a jury or admitted by the petitioner.[3]

The petitioner pleaded guilty to one count of conspiracy to possess with intent to distribute over 50 grams of crack cocaine.  The statutory maximum for this offense, even without prior felony drug convictions, is life.  21 U.S.C. § 841(b)(1)(A)(iii).  Even had the petitioner pleaded guilty to a similar conspiracy whose object was less than 50 grams, the statutory maximum for such an offense, even without prior felony drug convictions, is 40 years.  *Id.* §

---

[2]A valid appeal waiver precludes collateral attack to the same extent it precludes direct appeal.  *Williams v. United States*, 396 F.3d 1340, 1342 (11th Cir. 2005).  The appeal waiver in this case expressly extends to collateral attack under Section 2255.  (Doc. 29 at 8).

[3]It is open to a petitioner to identify "some indication" that the parties did not intend to invest the term "statutory maximum" with the ordinary meaning assigned in *Rubbo*.  396 F.3d at 1335.  The petitioner, however, has not attempted to do so.

841(b)(1)(B)(iii).  The petitioner's sentence of 20 years falls well below either statutory maximum.

The appeal waiver's final exception is for "[a]ny punishment that constitutes an upward departure from the guideline range."  (Doc. 29 at 8, ¶ 22.b).  At sentencing, the Court determined that the sentencing guideline range, after attributing to the petitioner 161.6 grams of crack and considering his criminal history (including prior felony drug convictions), was 168 to 210 months.  The statutory minimum for more than 50 grams and a prior felony drug conviction, however, was 240 months.  18 U.S.C. § 841(a)(1)(A)(iii).  Therefore, the Court sentenced the petitioner to 240 months.  (Doc. 71 at 6-7).

The mere fact that the Court imposed a sentence greater than the guideline range but equal to the statutory minimum does not implicate the "upward departure" exception.  In *United States v. Flint*, 156 Fed. Appx. 252 (11th Cir. 2005), as here, the appeal waiver excepted a sentence that "is the result of an upward departure from the guideline range."  *Id*. at 253.  In *Flint*, as here, the upper end of the guideline range was less than the corresponding statutory minimum, and the district court accordingly sentenced the defendant to the statutory minimum. *Id*. at 257.  The defendant argued that the court's action triggered the upward departure exception to his appeal waiver, but the Eleventh Circuit disagreed, holding that the sentence imposed "did not constitute an upward departure from the guidelines range" because the guidelines themselves specify that, "where the statutory minimum sentence exceeds the guidelines range, the statutory minimum *is* the applicable guidelines sentence."  *Id*. (emphasis added).  To constitute an upward departure when the guidelines range is below the statutory minimum, the court must sentence the defendant to more than the statutory minimum.  *Id*.

The petitioner responds only with his ipse dixit that his appeal waiver cannot be read to encompass claims of constitutional error.  (Doc. 91 at 2-4).  On the contrary, *Booker* constitutional claims have routinely been held to be encompassed within appeal waivers indistinguishable from the petitioner's and to fall outside the exceptions preserved in his appeal waiver.  *E.g., United States v. Thomas*, 2006 WL 1130863 at *8 (11th Cir. 2006); *United States v. Williams*, 161 Fed. Appx. 802, 803-04 (11th Cir. 2006); *United States v. Grinard-Henry*, 399 F.3d at 1295-96.

"Just as a guilty plea must be made knowingly and voluntarily to be effective, [citation

-4-

omitted], so must a sentence appeal waiver." *United States v. Bushert*, 997 F.2d 1343, 1350 (11th Cir. 1993). "In order to prevail in its argument that this court should enforce a sentence appeal waiver, ... [t]he government must show that either (1) the district court specifically questioned the defendant concerning the sentence appeal waiver during the Rule 11 colloquy, or (2) it is manifestly clear from the record that the defendant otherwise understood the full significance of the waiver." *Id.* at 1351. At the guilty plea hearing, the Court reviewed with the petitioner his appeal rights and the plea agreement's inclusion of a waiver of some of those rights, and the Court listed the three exceptions to the appeal waiver. The petitioner confirmed he understood his appeal rights and that he was giving up all his appeal rights with the three exceptions discussed herein. (Doc. 75 at 14-15). As in *United States v. Flint*, the Court "specifically questioned [the petitioner] about the sentence appeal waiver during the plea colloquy, and [the petitioner] acknowledged that he understood that he was relinquishing his right to appeal his sentence except under limited circumstances." 156 Fed. Appx. at 257. Accordingly, and as in *Flint*, the appeal waiver is "valid and enforceable" under *Bushert* and its progeny. *Id.*; *accord United States v. Rios*, 153 Fed. Appx. 665, 666 (11th Cir. 2005). The petitioner does not argue otherwise.

In short, the petitioner's claims under *Booker* are barred by the appeal waiver within his plea agreement.

## II.  Ineffective Assistance Claims.

### A.  Failure to Argue *Booker*.

The petitioner pleaded guilty in June 2003 and was sentenced in April 2004. Two months later, the Supreme Court decided *Blakely v. Washington*, 542 U.S. 296 (2004), and in January 2005 it decided *Booker*. The petitioner argues that his counsel was ineffective in failing to present a *Booker* argument before *Booker* or even *Blakely* was decided. It is legally impossible for the petitioner to establish ineffective assistance under this chronology.

The Eleventh Circuit "ha[s] held many times that reasonably effective representation cannot and does not include a requirement to make arguments based on predictions of how the law may develop." *Spaziano v. Singletary*, 36 F.3d 1028, 1039 (11th Cir. 1994)(internal quotes omitted); *accord Tarver v. Hopper*, 169 F.3d 710, 714 (11th Cir. 1999)("[T]o be effective,

Tarver's lawyer ... was not obligated to have anticipated the *Batson* decision."); *Pitts v. Cook*, 923 F.2d 1568, 1574 (11th Cir. 1991)("While the ability to think creatively can be a great asset to trial lawyers, lawyers rarely, if ever, are required to be innovative to perform within the wide range of conduct that encompasses the reasonably effective representation mandated by the Constitution."); *Funchess v. Wainwright*, 772 F.2d 683, 691 (11th Cir. 1985)("The failure of counsel to anticipate that an otherwise valid jury instruction would later be deemed improper by the state judiciary does not constitute ineffective assistance of counsel.").  These and like cases constitute "a wall of binding precedent that shuts out any contention that an attorney's failure to anticipate a change in the law constitutes ineffective assistance of counsel."  *United States v. Ardley*, 273 F.3d 991, 993 (11th Cir. 2001)(Carnes, J., concurring).

The petitioner's muted response to this "wall of binding precedent" is to suggest that the road from *Apprendi v. New Jersey*[4] to *Blakely* and *Booker* was so straight and so smooth that counsel should be charged with anticipating the latter decisions.  (Doc. 91 at 2).  The difficulties with this approach are of two sorts.  First, no matter how "clear" the five-justice majority in *Blakely* thought it that the "statutory maximum" under *Apprendi* means the "maximum sentence a judge may impose solely on the basis of the facts reflected in the jury verdict or admitted by the defendant," 542 U.S. at 303, it could not have been equally clear to trial lawyers attempting to read the tea leaves in the *Apprendi* decision.  Second, and more fundamentally, a lawyer cannot render constitutionally deficient performance by failing to raise an argument that probably will be, but has not yet, become binding precedent.  *See United States v. Ardley*, 273 F.3d at 993 (Carnes, J., concurring)("That rule applies even if the claim based upon anticipated changes in the law was reasonably available at the time counsel failed to raise it."); *cf. Black v. United States*, 373 F.3d 1140, 1144 (11th Cir. 2004)("[I]f a reasonable attorney in appellate counsel's position could have concluded that a given portion of an opinion was dictum discussing an unsettled question of law and not binding authority for his case, that attorney's performance will not be deemed deficient for not raising that issue to the court.").

In summary, as a matter of law the petitioner's trial counsel did not render ineffective assistance by failing to make a *Booker* argument before *Booker* or *Blakely* was decided.

---

[4]530 U.S. 466 (2000).

**B.  Failure to Investigate.**

"[C]ounsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary."  *Strickland v. Washington*, 466 U.S. 668, 691 (1984).  The petitioner asserts:  that trial counsel did not make a reasonable investigation as to the total amount of crack that could be attributed to him; that, had she performed a reasonable investigation, she would have learned that the total amount that could be attributed to him was 41.6 grams; that, had she learned this, she would not have advised him to plead guilty to a charge of conspiring to possess with intent to distribute over 50 grams; and that, had she not advised him to plead guilty to that charge, he would not have done so.  (Doc. 80 at 95-96; Doc. 91 at 6, 18, 22).

The record discloses that trial counsel performed a reasonable investigation into the quantity of crack that could be attributed to the petitioner.  The petitioner admits that counsel "rea[d] the government's file," (Doc. 91 at 21), which establishes that she was aware of the evidence on which the respondent would rely to establish the quantity of crack.  He also admits that he thoroughly discussed the factual resume with counsel, (Doc. 75 at 18), which establishes that she was aware of his version of the quantity of crack for which he was responsible.  On its face, this constitutes a reasonable investigation into the issue of quantity.  Notably, the petitioner is unable to identify a single additional step that counsel should or even could have taken to investigate drug quantity.

Even could the petitioner show that counsel's investigation into the issue of quantity was unreasonable and therefore constituted deficient performance, he cannot show that he was prejudiced thereby.[5]  Under his own theory, to show prejudice he would have to show that, had

---

[5]To establish ineffective assistance of counsel, "a petitioner must show that counsel's performance was deficient and that he was prejudiced by that deficiency.  A petitioner must overcome a strong presumption of competence, and the court must give significant deference to the attorney's decisions."  *Hagins v. United States*, 267 F.3d 1202, 1204-05 (11th Cir. 2001) (internal citations omitted); *accord Cross v. United States*, 893 F.2d 1287, 1290 (11th Cir. 1990). Deficient performance requires a showing that counsel's performance is "objectively unreasonable and falls below the wide range of competence demanded of attorneys in criminal cases."  *Id*.  Prejudice requires a showing of a "reasonable probability that the result of the proceedings would have been different had counsel not performed deficiently."  *Id.*

counsel performed a more thorough investigation, she would have discovered that no more than 41.6 grams could be attributed to him.  The trouble is that the petitioner *admitted* that more than 50 grams could be attributed to him, and no amount of investigation could have undone his admission or the evidence of the respondent which prompted it.

According to the factual resume that he signed,[6] the petitioner sold crack to two confidential informants on three occasions, in an amount totaling 41.6 grams.  (Doc. 29 at 10-15).  In addition, on or about November 4, 2002, the petitioner offered to sell the second confidential informant two ounces of crack.  (*Id*. at 13).  Because one ounce equals 28.3 grams, the petitioner's admission demonstrates that an additional 56.6 ounces was also included within the object of the conspiracy.  Even assuming that the 24.7 grams the same confidential informant bought three weeks later, (*id*. at 13-15), was part of this 56.6 grams, the November 4 offer would still represent an additional 31.9 grams beyond the 41.6 grams involved in the substantive counts.  Thus, while the petitioner may (and does) quibble as to whether the full 161.6 grams referenced in the factual resume could be attributed to him,[7] by his own admissions in the factual resume the respondent could prove a minimum of 73.5 grams — more than enough to satisfy the 50-gram threshold for sentencing under Section 841(a)(1)(A)(iii).[8]

---

[6]In the factual resume itself, the petitioner confirmed that the facts stated therein  "are accurate."  (Doc. 29 at 15).  At his guilty plea, he again "acknowledg[ed] and admitt[ed] that [he] participated and did the things that are alleged in this Factual Resume," (Doc. 75 at 18), and he denied that there was "anything that [he] want[ed] to add or take away from the Factual Resume."  (*Id*. at 19).

[7]The petitioner admits that, when he was arrested on federal charges in April 2003, over $5,000 in cash was found inside his vehicle.  (Doc. 29 at 15).  At his guilty plea, he complained about "the giving of a quantity of something that I didn't actually have, converting funds into dope that never actually even existed."  (Doc. 75 at 9).  That is, the petitioner believes it improper for the respondent to extrapolate from the cash recovered a certain, or any, amount of crack.

[8]While the petitioner complains about the respondent's alleged inability to prove up 161.6 grams, only the 50-gram figure is relevant.  The 161.6 grams was utilized only to calculate the petitioner's base offense level under the guidelines, but his plea to conspiring to possess with intent to distribute over 50 grams (combined with his prior felony drug convictions) resulted in a mandatory minimum sentence higher than the guideline sentence based on 161.6 grams.  That is, only the first 50 grams figured into the petitioner's sentence, the excess being superfluous.

In summary, as a matter of law the petitioner's trial counsel did not render ineffective assistance in connection with her investigation of the quantity of crack that was the object of the conspiracy.

## III.  Additional Claims.

In his reply, the petitioner purports to inject several new claims into these proceedings. In particular, he asserts that trial counsel was ineffective in that: (1) she did not object to the application of Section 851 as an unconstitutional delegation of legislative power to the executive; (2) she failed to advise him that the respondent had filed an information under Section 851(a) that would increase the mandatory minimum; and (3) she incorrectly advised him that he would face a 10-year mandatory minimum if he pleaded guilty but a 20-year mandatory minimum if he proceeded to trial.  (Doc. 91 at 4-5, 7-8, 18-19, 20).  Assuming without deciding that the petitioner may inject new claims without filing a motion to amend, they fail on both procedural and substantive grounds.

### A.  Relation Back.

The petitioner was required to file his motion to vacate within one year after his conviction became final.  28 U.S.C. § 2255.  The Eleventh Circuit entered judgment on November 9, 2004.  (Doc. 78).  Because the petitioner did not petition for writ of certiorari, (Doc. 86 at 3), his conviction became final 90 days after the entry of judgment, i.e., on February 7, 2005.  (Doc. 78).[9]  The petitioner was thus required to file on or before February 7, 2006, but his reply was not filed until April 2006.  Accordingly, the claims he raises therein are untimely unless they "relate back" to the filing of his motion to vacate.  *E.g., Davenport v. United States*, 217 F.3d 1341, 1344 (11th Cir. 2000).

"An amendment of a pleading relates back to the date of the original pleading when ... the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading ...."  Fed. R. Civ. P. 15(c)(2).  Rule 15(c) applies to motions to vacate filed under Section 2255.  *E.g., Farris v.*

---

[9]*E.g., United States v. Mantecon*, 160 Fed. Appx. 948, 954 (11th Cir. 2005).

*United States*, 333 F.3d 1211, 1215 (11ᵗʰ Cir. 2003).  To successfully invoke Rule 15(c) in the Section 2255 context, however, "[t]he untimely claim must have arisen from the 'same set of facts' as the timely filed claim, not from separate conduct or a separate occurrence in 'both time and type.'" *Id*. (quoting *Davenport v. United States*, 217 F.3d at 1346).  "The *Davenport* rule makes it clear that the key factor is whether the amended claims arise from the same underlying facts as the original claims."  *Pruitt v. United States*, 274 F.3d 1315, 1319 (11ᵗʰ Cir. 2001); *accord Mayle v. Felix*, 125 S. Ct. 2562, 2574 (2005)("So long as the original and amended petitions state claims that are tied to a common core of operative facts, relation back will be in order.").

The *Davenport* decision illustrates just how close the relation must be between the timely and the tardy claims.  In *Davenport*, the petitioner timely argued that trial counsel was ineffective for failing to argue that the substance he possessed was not in fact crack cocaine and for failing to argue that its weight was improperly calculated because it included moisture content.  217 F.3d at 1346.  In his amendment, the petitioner argued that trial counsel was ineffective for not arguing that the amount of cocaine for which he was sentenced included three grams that were not part of the underlying course of conduct and for relying on a summary lab report rather than the full report.  *Id*.  The *Davenport* Court noted that "[t]he original claims thus dealt with the chemical makeup of the drugs, whereas the amended claims addressed the relationship between the drug transactions and [petitioner's] counsel's having improperly relied on a one-page lab summary instead of obtaining the full eleven-page lab report."  *Id*.  Thus, as a matter of law, the "new claims in Davenport's amended § 2255 motion d[id] not relate back to the date of his timely filed § 2255 motion."  *Id*.  The new claims did not relate back even though they, like the timely claims, were framed as claims of ineffective assistance concerning the cocaine at issue.

*Davenport* dictates the decision here.  The petitioner's new claims that counsel was ineffective in failing to tell him that an information had been filed and in incorrectly telling him that the mandatory minimum would be less if he pleaded guilty than if he were found guilty at trial cannot relate back to his timely claim that counsel was ineffective in failing to investigate the quantity of drugs at issue, because they arise out of, and depend upon, wholly different facts about what counsel did and did not do.  Likewise, his new claim that counsel was ineffective in

failing to argue that Section 851 unconstitutionally delegates to the executive branch legislative authority to fix punishment cannot relate back to his original claim that Section 851 unconstitutionally allows a judge to determine prior felony drug convictions by a preponderance of the evidence rather than a jury by a reasonable doubt standard, because the two arise out of, and depend on, different facts.

In summary, the claims the petitioner purports to inject in his reply are time-barred.

### B.  Merits.

Even were the petitioner's tardy claims properly before the Court, they are patently meritless.

### 1.  Improper delegation.

"In short, the power of the prosecutor under § 851 to increase the mandatory minimum sentence facing the defendant is no greater than the classic power of the executive to choose between charges carrying different mandatory penalties[, such that Section 851] does not improperly delegate legislative power to the executive ...."  *United States v. Cespedes*, 151 F.3d 1329, 1335 (11th Cir. 1998).  The petitioner's proposed argument, in short, has been unequivocally rejected in a decision binding on this Court.  As a matter of law, counsel cannot be ineffective in failing to raise such an argument.  *Bolender v. Singletary*, 16 F.3d 1547, 1573 (11th Cir. 1994)( "[I]t is axiomatic that the failure to raise nonmeritorious issues does not constitute ineffective assistance" of counsel).

### 2.  Filing of information.

The petitioner complains that counsel did not advise him that the respondent had filed an information under Section 851.  The problem, he says, is that he thus did not know he was subject to a 20-year mandatory minimum, which impacted his decision to plead guilty.  (Doc. 91 at 4, 18).  However, the plea agreement which the petitioner signed identifies the sentencing range upon pleading guilty as 20 years to life, (Doc. 29 at 3), and he acknowledged at his guilty plea that he had thoroughly reviewed the agreement and discussed it with counsel.  (Doc. 75 at 5).  Moreover, at his guilty plea the Court advised the petitioner that the information had been

filed and that its effect was to raise the mandatory minimum to 20 years. (*Id*. at 11). The petitioner acknowledged that he understood that 20 years was the minimum penalty he could receive if convicted, (*id*. at 10-12), and he elected to plead guilty with that understanding.

To establish that counsel's assistance was ineffective, the petitioner would have to show that he was prejudiced thereby which, in the guilty plea context, requires him to show a reasonable probability that, had counsel not been ineffective, he would not have pleaded guilty.[10] The petitioner's decision to plead guilty even after receiving and understanding the information he claims was not provided by his counsel negates his ability to show prejudice under this standard.

### 3.  Mis-identification of mandatory minimum.

This claim falls for the same reason as the previous one. The petitioner asserts that, had counsel not told him incorrectly that the mandatory minimum would be 10 years if he pleaded guilty versus 20 years if he proceeded to trial, he would not have pleaded guilty. (Doc. 91 at 4-5, 19). However, even after the Court corrected the petitioner's misapprehension, he elected to plead guilty knowing full well that his minimum sentence would be 20 years. Thus, the petitioner was not prejudiced by any deficient performance by counsel.

## IV.  Evidentiary Hearing.

The petitioner requests an evidentiary hearing. (Doc. 91 at 23). "Unless the motion [under Section 2255] and the files and records of the case conclusively show that the prisoner is entitled to no relief, the court shall cause notice thereof to be served upon the United States attorney, grant a prompt hearing thereon, determine the issues and make findings of fact and conclusions of law with respect thereto." 28 U.S.C. § 2255. However, an evidentiary hearing is not required in every case. For example, no evidentiary hearing is required:

- Where the petitioner's claim is "patently frivolous," *Holmes v. United States*, 876 F.2d 1545, 1553 (11th Cir. 1989);

- Where the claim is "based upon unsupported generalizations," *id*.;

---

[10]*Hill v. Lockhart*, 474 U.S. 52, 59 (1985).

-12-

- Where the petitioner has not "allege[d] facts that, if true, would entitle him to relief," *Aron v. United States*, 291 F.3d 708, 715 (11th Cir. 2002);

- Where the facts alleged are not "reasonably specific [and] non-conclusory," *id*. at 714-15;

- "[W]here the petitioner's allegations are affirmatively contradicted by the record," *id.* at 715;

- Where the petitioner's version of the facts has already been accepted as true, *Turner v. Crosby*, 339 F.3d 1247, 1274-75 (11th Cir. 2003); and

- Where "the district court can determine the merits of the ineffectiveness claim based on the existing record." *Schultz v. Wainwright*, 701 F.2d 900, 901 (11th Cir. 1983).

As is evident from the Court's discussion above, each one of the petitioner's claims is subject to one or more of these exceptions.  Accordingly, he is not entitled to an evidentiary hearing.


**CONCLUSION**

For the reasons set forth above, the petitioner's motion to vacate is **denied**.


DONE and ORDERED this 21st day of September, 2006.

s/ WILLIAM H. STEELE
UNITED STATES DISTRICT JUDGE